IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

MICHELLE LEANN MENSEN,

Plaintiff,

vs.

CAROLYN W. COLVIN,
Commissioner of Social Security,

Defendant.

No. C13-0121

RULING ON JUDICIAL REVIEW

TABLE OF CONTENTS

I.      INTRODUCTION ........................................ 2

II.     PRINCIPLES OF REVIEW ................................ 2

III.    FACTS ............................................... 4
        A.   Mensen's Education and Employment Background ............ 4
        B.   Administrative Hearing Testimony from May 16, 2014 .......... 4
             1.   Mensen's Testimony ............................ 4
             2.   Vocational Expert's Testimony ..................... 5
        C.   Mensen's Medical History ............................ 6

IV.     CONCLUSIONS OF LAW ................................ 13
        A.   ALJ's Disability Determination ....................... 13
        B.   Objections Raised By Claimant ...................... 15
             1.   Treating Source Opinions ...................... 15
                  a.   Dr. Schroeder's Opinions ................. 17
                  b.   Dr. Safdar's Opinions .................... 18
             2.   Credibility Determination ...................... 20
             3.   Hypothetical Question ........................ 23
        C.   Reversal or Remand ............................... 24

V.      CONCLUSION ........................................ 25

VI.     ORDER ............................................. 26

## I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 1) filed by Plaintiff Michelle Leann Mensen on November 5, 2013, requesting judicial review of the Social Security Commissioner's decision to deny her applications for Title II disability insurance benefits and Title XVI supplemental security income ("SSI") benefits.[1] Mensen asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide her disability insurance benefits and SSI benefits. In the alternative, Mensen requests the Court to remand this matter for further proceedings.

## II. PRINCIPLES OF REVIEW

Title 42, United States Code, Section 405(g) provides that the Commissioner's final determination following an administrative hearing not to award disability insurance benefits is subject to judicial review. 42 U.S.C. § 405(g). Pursuant to 42 U.S.C. § 1383(c)(3), the Commissioner's final determination after an administrative hearing not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3). Title 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

The Court will "affirm the Commissioner's decision if supported by substantial evidence on the record as a whole." *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012) (citation omitted). Substantial evidence is defined as "'less than a preponderance but . . . enough that a reasonable mind would find it adequate to support the conclusion.'"

---

[1] On February 18, 2014, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

*Id.* (quoting *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010)); *see also Brock v. Astrue*, 674 F.3d 1062, 1063 (8th Cir. 2010) ("Substantial evidence is evidence that a reasonable person might accept as adequate to support a decision but is less than a preponderance.").

In determining whether the decision of the Administrative Law Judge ("ALJ") meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision "extends beyond examining the record to find substantial evidence in support of the ALJ's decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Buckner v. Astrue*, 646 F.3d 549 (8th Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial of benefits so long as the ALJ's decision falls within the available zone of choice.'" *Id.* at 556 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)). "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact.'" *Id.* Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v.*

*Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) ("If substantial evidence supports the ALJ's decision, we will not reverse the decision merely because substantial evidence would have also supported a contrary outcome, or because we would have decided differently."); *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) ("'If there is substantial evidence to support the Commissioner's conclusion, we may not reverse even though there may also be substantial evidence to support the opposite conclusion.' *Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005).").

## III. FACTS

### A. Mensen's Education and Employment Background

Mensen was born in 1972. She is a high school graduate. She also attended one year of college. In the past, Mensen held jobs as a customer service representative, order taker, youth counselor, and childcare worker.

### B. Administrative Hearing Testimony from May 16, 2014

### 1. Mensen's Testimony

At the administrative hearing, Mensen's attorney asked Mensen why she believed she was no longer able to work. Mensen stated that she could not work because she suffered from PTSD and panic attacks. Specifically, Mensen testified that she has daily flashbacks to multiple sexual assaults committed against her in the past. Due to the assaults, she does not like to go places where there are a lot of people because she worries that someone will hurt her. She described her panic attacks as involving chest pain, difficulty breathing, and hysterical crying. According to Mensen, she takes medication and often calls a crisis telephone hotline when a panic attack occurs. It generally takes 20 to 45 minutes to get herself under control.

Mensen also stated that she suffers from depression. She described her depression on bad days as follows:

4

I just -- I don't bother taking a shower or getting dressed and all that stuff's just too much. I just get up in the morning, I take my pillow to the couch, and I lay down and watch TV. And sleep on and off in the day, and I -- that's what I remember working with my therapist on too, because I go early, three or four, maybe five days without taking a shower or anything, because I'm just -- I just [don't] seem to get myself to get up and do it, because I just don't care. I just want to lay there.

(Administrative Record at 71-72.) Mensen testified that she has these types of days "usually about three days a week."[2] Mensen also stated that she has crying spells on a daily basis. Specifically, she testified "[s]ometimes, I don't know why I'm crying, I just, I feel like so much hurt inside, and I just -- I don't know how to make it go away. Because I keep trying different medications, and it doesn't go away."[3]

Mensen also indicated that she suffers from migraine headaches once or twice per month. Her migraines cause blurry vision, dizziness, and nausea. She takes medication to treat her migraines. Mensen has also been diagnosed with fibromyalgia and suffers from chronic pain. She stated she can walk in a drug store for about 20 minutes with the assistance of a walker. According to Mensen, her chronic pain makes it difficult for her to carry items weighing more than a gallon of milk or pick up a basket full of clothes.

### 2. Vocational Expert's Testimony

At the hearing, the ALJ provided vocational expert Melinda Stahr with a hypothetical for an individual who is limited to:

lifting and carrying 20 pounds occasionally, 10 pounds frequently, stand and walk [six] hours a day, sit six hours a day. The hypothetical individual can only occasionally climb, balance, stoop, kneel, crouch, crawl. This hypothetical individual should have no more than occasional exposure to

---

[2] Administrative Record at 72.

[3] *Id.* at 72-73.

extreme cold or noise. This hypothetical individual should have no exposure to hazardous conditions, such as working around heights, or moving machinery. This hypothetical individual can never climb ropes, ladders, or scaffolds. This hypothetical individual is limited to tasks that could be learned in 30 days or less, involving no more than simple work related decisions, with only occasional work place changes. This work should require little or no judgment. And this hypothetical individual should have no more than occasional interaction with the general public, co-workers, or supervisors.

(Administrative Record at 81-82.) The vocational expert testified that under such limitations, Mensen could not perform her past relevant work. The vocational expert testified, however, that Mensen could perform the following jobs: (1) small products assembler (1,600 positions in Iowa and 29,000 positions in the nation), (2) housekeeper maid (1,600 positions in Iowa and 136,000 positions in the nation), and (3) folder (4,800 positions in Iowa and 420,000 positions in the nation).

## C. Mensen's Medical History

On September 18, 2009, Mensen met with Dr. Dwight J. Schroeder, M.D. Mensen reported to Dr. Schroeder that:

She is very terrified of her husband at this time and that terrifying feeling gets worse once he comes home after work at night. Her mood is down. Appetite is down. Weight is down some, she is unsure how much. Sleep is down with initial insomnia. She wakes up with headaches in the morning. Energy is down. Motivation is down. Interest is down. Concentration is down. Memory is down. She has crying spells with and without reason, [feelings of] worthlessness, hopelessness, trouble making simple decisions, irritability, suspiciousness, excess worrying, some "I don't care attitude" and increased anxiety. . . . She was raped at the age of 21 and ever since then has had posttraumatic stress disorder and has been treated for that also. [She] has generalized anxiety disorder for which she had been taking clonazepam for some

> time. For the past eight years, she has been on Celexa and has
> done relatively well up until recently.

(Administrative Record at 631.) On her mental status examination, Dr. Schroeder noted that Mensen's mood was depressed, her affect restricted, and she was tearful throughout most of the interview process. Dr. Schroeder diagnosed Mensen with major depressive disorder, PTSD, generalized anxiety disorder, and adjustment reaction with mixed emotional features. Dr. Schroeder recommended medication and counseling as treatment.

On July 26, 2010, Dr. Melodee Woodard, M.D., reviewed Mensen's medical records and provided Disability Determination Services ("DDS") with a physical residual functional capacity ("RFC") assessment for Mensen. Dr. Woodard determined that Mensen could: (1) occasionally lift and/or carry 20 pounds, (2) frequently lift and/or carry 10 pounds, (3) stand and/or walk with normal breaks for a total of about six hours in an eight-hour workday, (4) sit with normal breaks for a total of about six hours in an eight-hour workday, and (5) push and/or pull without limitations. Dr. Woodard also determined that Mensen could occasionally climb, balance, stoop, kneel, crouch, and crawl. Dr. Woodard further found that Mensen should avoid concentrated exposure to extreme cold, noise, and hazards, such as machinery and heights. Dr. Woodard concluded that:

> Severity of symptoms [and] functional limitations alleged by
> [Mensen] appear significantly disproportional to the objective
> evidence. The bulk of the evidence provided by the
> longitudinal record supports physical capacity to sustain work
> [within] limits outlined above.

(Administrative Record at 994.)

On July 28, 2010, Dr. Rhonda Lovell, Ph.D., reviewed Mensen's medical records and provided DDS with with a Psychiatric Review Technique and mental RFC assessment for Mensen. On the Psychiatric Review Technique assessment, Dr. Lovell diagnosed Mensen with major depressive disorder, adjustment disorder, and PTSD. Dr. Lovell offered no opinion on Mensen's limitations in the areas of acitivies of daily living, social

7

functioning, and concentration, persistence, or pace.[4] On the mental RFC assessment, Dr. Lovell determined that Mensen was moderately limited in her ability to: maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, accept instructions and respond appropriately to criticism from supervisors, and respond appropriately to changes in the work setting. Dr. Lovell concluded that:

> [Mensen] appears to have a severe mental impairment that does not meet listing level severity. Based on mental status findings and [activities of daily living], [Mensen] is able to understand and remember instructions and procedures for basic and detailed tasks. Concentration may be variable but [activities of daily living] and presentation in treatment support her ability to complete tasks that do not require strict attention to detail. [Mensen's] presentation and work history suggest moderate difficulties with authority figures. According to treatment records and [activities of daily living], [Mensen's] disorders moderately disrupt her ability to regularly complete a typical work week. This assessment is consistent with the overall evidence of record. No treating source statement was offered. No particular credibility concerns were identified.

(Administrative Record at 1045.)

On September 2, 2010, Dr. Schroeder wrote a letter regarding Mensen. In the letter, Dr. Schroeder stated that he was treating Mensen for major depressive disorder, generalized anxiety, and PTSD. Dr. Schroeder also noted that she has diagnoses of fibromyalgia, migraine headaches, diabetes, restless leg syndrome, sleep apnea, and GERD. Dr. Schroeder opined that due to the combination of her various illnesses and

---

[4] *See* Administrative Record at 1039 (showing that Dr. Lovell left the "Rating of Functional Limitations" page in the Psychiatric Review Technique assessment blank).

impairments, she "is not able to maintain a full-time competitive work setting."[5] Specifically, Dr. Schroeder found that:

> [Mensen] would have difficulty working with the general public because of the anxiety or depression such that she has difficulty focusing, concentrating, or motivating herself and even her energy is down and the fibromyalgia pain is to the extent that she has difficulty doing a lot of activities during the day.

(Administrative Record at 1057.) Dr. Schroeder concluded that "I believe, she is indeed disabled from the social security standpoint and should be granted her disability and other programs that could help her."[6]

On April 18, 2011, at the request of Mensen's attorney, Dr. Schroeder filled out a "Psychiatric/Psychological Impairment Questionnaire" for Mensen. Dr. Schroeder diagnosed Mensen with major depressive disorder, PTSD, and generalized anxiety disorder. Dr. Schroeder rated her prognosis as "fair." Dr. Schroeder identified the following symptoms for Mensen: appetite disturbance with weight change, sleep disturbance, mood disturbance, emotional lability, anhedonia, feelings of guilt or worthlessness, social withdrawal or isolation, decreased energy, intrusive recollections of a traumatic experience, and generalized persistent anxiety. Dr. Schroeder found that Mensen was markedly limited in the ability to: understand and remember one or two step instructions, understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, work in coordination or proximity to others without being distracted by them, complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, accept

---

[5] Administrative Record at 1057.

[6] Administrative Record at 1057. Dr. Schroeder wrote an almost identical letter on October 25, 2010. *See id.* at 1074.

instructions and respond appropriately to criticism from supervisors, get along with co-workers or peers without distracting them or exhibiting behavioral extremes, respond appropriately to changes in the work setting, and set realistic goals or make plans independently. Additionally, Dr. Schroeder opined that Mensen's psychiatric condition is worsened by her fibromyalgia pain. Dr. Schroeder also found that Mensen was incapable of performing even "low stress" jobs. Lastly, Dr. Schroeder opined that Mensen would miss more than three days per month due to her impairments or treatment for her impairments.

On May 15, 2012, at the request of Mensen's attorney, Dennis L. Dozier, LISW, Mensen's treating counselor, filled out a "Psychiatric/Psychological Impairment Questionnaire" for Mensen. Dozier diagnosed Mensen with major depressive disorder and borderline personality disorder. Dozier rated her prognosis as "guarded," indicating that she requires "a lot of support." Dozier identified the following symptoms for Mensen: sleep disturbance, mood disturbance, emotional lability, anhedonia, feelings of guilt or worthlessness, social withdrawal or isolation, decreased energy, and suicidal ideation or attempts. Dozier noted that Mensen "has been hospitalized frequently since I have known her for depression and/or suicide attempts."[7] Dozier found that Mensen was markedly limited in the ability to: remember locations and work-like procedures, understand and remember one or two step instructions, understand and remember detailed instructions, carry out simple one or two step instructions, carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerance, sustain an ordinary routine without supervision, make simple work-related decisions, complete a

---

[7] Administrative Record at 1792. Mensen was hospitalized on four separate occasions prior to Dozier filling out the questionnaire. She was hospitalized in January 2011, September 2011, December 2011, and late April/early May 2012. Each of these hospitalizations was due to a suicide attempt by overdosing on medication.

normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, ask simple questions or request assistance, accept instructions and respond appropriately to criticism from supervisors, get along with co-workers or peers without distracting them or exhibiting behavioral extremes, respond appropriately to changes in the work setting, travel in unfamiliar places, and set realistic goals or make plans independently. Dozier also found that Mensen was incapable of performing even "low stress" jobs. Lastly, Dozier opined that Mensen would miss more than three days per month due to her impairments or treatment for her impairments.

Shortly after filling out the questionnaire, on May 26, 2012, Dozier provided a letter regarding Mensen. Dozier noted that:

> [Mensen] has had frequent hospitalizations with suicide attempts and also suffers with frequent suicidal ideation. As well as describing suffering with chronic pain from fibromyalgia. [She] has been hospitalized many times as a result of depression since I have known her. These factors severely limit [her] activities and it is my belief that she would not be able to do full time, competitive work.

(Administrative Record at 1800.)

On April 3, 2013, at the request of Mensen's attorney, Dr. Ali Safdar, M.D., a treating psychiatrist, and Dozier filled out a "Psychiatric/Psychological Impairment Questionnaire" for Mensen. Dr. Safdar and Dozier diagnosed Mensen with major depressive disorder, PTSD, generalized anxiety disorder, and borderline personality disorder. Dr. Safdar and Dozier opined that "[t]reatment with medications [and] talk therapy has been marginally helpful at best[. Mensen] struggles all the time with pervasive

thoughts of suicide."[8] Dr. Safdar and Dozier identified the following symptoms for Mensen: poor memory, appetite disturbance with weight change, sleep disturbance, mood disturbance, emotional lability, recurrent panic attacks, anhedonia, feelings of guilt or worthlessness, difficulty thinking or concentrating, suicidal ideation or attempts, social withdrawal or isolation, intrusive recollections of a traumatic experience, persistent irrational fears, generalized persistent anxiety, and pathological dependence. Dozier noted that Mensen had been hospitalized for depression or suicidal ideation "at least" 7 or 8 times since he started treating her in late 2010. Dr. Safdar and Dozier found that Mensen was markedly limited in the ability to: carry out simple one or two step instructions, carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerance, sustain an ordinary routine without supervision, work in coordination with or proximity to others without being distracted by them, make simple work-related decisions, complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, ask simple questions or request assistance, accept instructions and respond appropriately to criticism from supervisors, get along with co-workers or peers without distracting them or exhibiting behavioral extremes, maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness, respond appropriately to changes in the work setting, be aware of normal hazards and take appropriate precautions, travel in unfamiliar places, and set realistic goals or make plans independently. Dr. Safdar and Dozier also found that Mensen was incapable of performing even "low stress" jobs. Lastly, Dr. Safdar and Dozier opined that Mensen would miss more than three days per

---

[8] Administrative Record at 1894.

month due to her impairments or treatment for her impairments. Dr. Safdar and Dozier concluded that:

> [Mensen] has been hospitalized frequently for suicide/general depression. The confluence of clinical depression and personality disorder, combined with anxiety would in my eyes prevent her from working. She might be able to "get a job" but couldn't sustain for any length of time.

(Administrative Record at 1901.)

## IV. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that Mensen is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007); *Anderson v. Barnhart*, 344 F.3d 809, 812 (8th Cir. 2003). The five steps an ALJ must consider are:

> (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work.

*Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (citing *Eichelberger*, 390 F.3d at 590); *see also* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff*, 421 F.3d at 790, in turn quoting *Eichelberger*, 390 F.3d at 590-91).

In order to establish a disability claim, "the claimant bears the initial burden to show that [he or] she is unable to perform [his or] her past relevant work." *Beckley v.*

*Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998) (citing *Reed v. Sullivan*, 988 F.2d 812, 815 (8th Cir. 1993)). If the claimant meets this burden, the burden of proof then shifts to the Commissioner to demonstrate that the claimant retains the residual functional capacity ("RFC") to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and work experience. *Id.* The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. §§ 404.1545, 416.945. "It is 'the ALJ's responsibility to determine [a] claimant's RFC based on all the relevant evidence, including medical records, observations of treating physicians and others, and [the] claimant's own description of her limitations.'" *Page*, 484 F.3d at 1043 (quoting *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)); 20 C.F.R. §§ 404.1545, 416.945.

The ALJ applied the first step of the analysis and determined that Mensen had not engaged in substantial gainful activity since April 9, 2010. At the second step, the ALJ concluded from the medical evidence that Mensen had the following severe impairments: fibromyalgia, migraine headaches, arthritis, depression, anxiety, PTSD, borderline personality disorder, and degenerative disc disease. At the third step, the ALJ found that Mensen did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Mensen's RFC as follows:

> [Mensen] has the residual functional capacity to perform light work . . . except that only occasionally can [she] climb, balance, stoop, kneel, crouch, or crawl. She should [have] no more than occasional exposure to cold and noise; there is to be no exposure to hazards, such as heights or moving machinery. Similarly, [Mensen] should not climb ropes, ladders, or scaffolds. [She] is limited [to] tasks that can be learned in 30 days or less, involving no more than simple work-related decisions with only occasional work-place changes. She should have to use little or no judgment, and have no more

14

than occasional interaction with the general public, co-workers, and supervisors.

(Administrative Record at 34.) Also at the fourth step, the ALJ determined that Mensen could not perform her past relevant work. At the fifth step, the ALJ determined that based on her age, education, previous work experience, and RFC, Mensen could work at jobs that exist in significant numbers in the national economy. Therefore, the ALJ concluded that Mensen was not disabled.

## B. Objections Raised By Claimant

Mensen argues that the ALJ erred in three respects. First, Mensen argues that the ALJ failed to properly evaluate the opinions of her treating psychiatrists, Drs. Schroeder and Safdar. Second, Mensen argues that the ALJ failed to properly evaluate her subjective allegations of disability. Lastly, Mensen argues that the ALJ relied on flawed testimony from the vocational expert.

### 1. Treating Source Opinions

Mensen argues that the ALJ failed to properly evaluate the opinions of her treating psychiatrists, Drs. Schroeder and Safdar. Specifically, Mensen argues that the ALJ's reasons for discounting Dr. Schroeder's and Dr. Safdar's opinions are not supported by substantial evidence in the record. Mensen concludes that this matter should be remanded for further consideration of Dr. Schroeder's and Dr. Safdar's opinions.

The ALJ is required to "assess the record as a whole to determine whether treating physicians' opinions are inconsistent with substantial evidence of the record." *Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2)). "Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as a whole." *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001) (citing *Prosch v Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)). "The ALJ may discount or disregard such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has

15

offered inconsistent opinions." *Id.*; *see also Travis*, 477 F.3d at 1041 ("A physician's statement that is 'not supported by diagnoses based on objective evidence' will not support a finding of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003). If the doctor's opinion is inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight.'*Id..*); *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004) (an ALJ does not need to give controlling weight to a physician's RFC if it is inconsistent with other substantial evidence in the record); *Cabrnoch v. Bowen*, 881 F.2d 561, 564 (8th Cir. 1989) (the resolution of conflicts of opinion among various treating and examining physicians is the proper function of an ALJ). The ALJ may discount or disregard a treating physician's opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions. *Hamilton v. Astrue*, 518 F.3d 607, 609 (8th Cir. 2008).

Also, the regulations require an ALJ to give "good reasons" for assigning weight to statements provided by a treating physician. *See* 20 C.F.R. § 404.1527(d)(2). An ALJ is required to evaluate every medical opinion he or she receives from a claimant. 20 C.F.R. § 404.1527(d). If the medical opinion from a treating source is not given controlling weight, then the ALJ considers the following factors for determining the weight to be given to all medical opinions: "(1) examining relationship, (2) treating relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors." *Wiese*, 552 F.3d at 731 (citing 20 C.F.R. §§ 404.1527(c)). "'It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole.'" *Wagner*, 499 F.3d at 848 (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)). The decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear

to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight. SSR *96-2P*, 1996 WL 374188 (1996).

### a. *Dr. Schroeder's Opinions*

In her decision, the ALJ addressed Dr. Schroeder's opinions.[9] While not expressly weighing Dr. Schroeder's opinions, the ALJ concluded that Dr. Schroeder's opinions "are not supported in this record."[10] The ALJ offered only one reason to support her conclusion. Namely, that in some of his treatment notes, Dr. Schroeder determined Mensen's mental status evaluations to be "fairly good."[11] The ALJ also noted that she believes the opinions of Dr. Lovell, a non-examining state agency doctor, are more consistent with the overall record than Dr. Schroeder's opinions.[12]

In reviewing the ALJ's decision, the Court bears in mind that an ALJ has a duty to develop the record fully and fairly. *Cox*, 495 F.3d at 618. Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quotation omitted). Furthermore, if an ALJ rejects the opinions of a treating physician, the regulations require that the ALJ give "good reasons" for rejecting those opinions. *See* 20 C.F.R. § 404.1527(d)(2).

The Court finds that the ALJ has not fully met these requirements. While the ALJ points out that Mensen's mental status evaluations were sometimes "fairly good" at appointments with Dr. Schroeder, the ALJ failed to consider or even address Mensen's history of multiple hospitalizations for suicide attempts. Furthermore, Dr. Schroeder's

---

[9] *See* Administrative Record at 40.

[10] Administrative Record at 40.

[11] *Id.*

[12] *Id.*

opinions are consistent with other treating sources in the record.[13]  Specifically,
Dr. Schroeder's opinions are consistent with the opinions of Dr. Safdar, another treating
psychiatrist, and Dozier, Mensen's long-time treating counselor.[14]  Moreover, the Court
is unpersuaded by the ALJ's reliance on Dr. Lovell's opinions.  Not only has Dr. Lovell
never met Mensen, her opinions were given in July 2010, a mere four months after
Mensen's alleged disability onset date.  Unlike Dr. Lovell's opinions, Dr. Schroeder's,
Dr. Safdar's, and Dozier's consistent opinions are from a treatment period of 2009 to
2013.  Also significant, unlike Dr. Lovell, who was a non-examining state agency doctor,
Dr. Schroeder, Dr. Safdar, and Dozier are all long-time treating sources, who regularly
treated Mensen for her mental impairments.

Therefore, under such circumstances, and having reviewed the entire record, the
Court concludes the ALJ has failed to give "good reasons" for rejecting the opinions of
Dr. Schroeder.  *See Tilley*, 580 F.3d at 680 ("The regulations require the ALJ to 'always
give good reasons' for the weight afforded to the treating source's opinion.").  The Court
further finds that the ALJ failed in her duty to fully and fairly develop the record with
regard to Dr. Schroeder's opinions.  Accordingly, the Court determines that this matter
should be remanded for further consideration of Dr. Schroeder's opinions.  On remand,
the ALJ shall provide clear reasons for accepting or rejecting Dr. Schroeder's opinions and
support her reasons with evidence from the record.

### b.    Dr. Safdar's Opinions

In discounting Dr. Safdar's opinions, the ALJ addressed a questionnaire filled out
and signed by both Dr. Safdar and Dozier.  In discussing the questionnaire, the ALJ
focuses her analysis on Dozier, and discounts Dozier's opinions for the following reasons:

---

[13] *See id*. at 1791-1798 (opinions from Dozier); 1894-1901 (opinions from Dozier
and Dr. Safdar).

[14] *Id*.

(1) Dozier is not an acceptable medical source; (2) Dozier's conclusion that Mensen is disabled is reserved for the Commissioner; (3) Dozier relied on Mensen's subjective reports; and (4) Dozier's opinions are from a check-the-box questionnaire. After discounting Dozier's opinions, the ALJ addresses Dr. Safdar's opinions in a single sentence, and determined that "[f]or the same reasons discussed above, the undersigned gives little weight to Dr. Safdar's opinion as well."[15]

Again, the Court notes that an ALJ has a duty to develop the record fully and fairly. *Cox*, 495 F.3d at 618. Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quotation omitted). Furthermore, if an ALJ rejects the opinions of a treating physician, the regulations require that the ALJ give "good reasons" for rejecting those opinions. *See* 20 C.F.R. § 404.1527(d)(2).

The Court finds that the ALJ has not fully met these requirements. First, unlike Dozier, Dr. Safdar *is* an acceptable medical source. As such, and ALJ's decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight. SSR *96-2P*, 1996 WL 374188 (1996). The ALJ failed to provide such reasons. Second, the ALJ is incorrect in her finding that Dr. Safdar's, and Dozier's opinions for that matter, come exclusively from a check-the-box questionnaire. While there are check-boxes on the questionnaire, there is also space throughout the questionnaire for the treating sources to provide written explanations for

---

[15] Administrative Record at 39.

their findings, which they did.[16]  Third, the Court is unpersuaded that standing alone, reliance on Mensen's subjective report of symptoms and medical history for the purposes of offering an opinion on her condition is any reason — "clear," "good," or otherwise — for rejecting Dr. Safdar's and Dozier's opinions.  "A patient's report of complaints, or history, is an essential diagnostic tool" for any doctor when he or she is offering a medical opinion or diagnosis.  *Flanery v. Chater*, 112 F.3d 346, 350 (8th Cir. 1997); *see also Brand v. Secretary of Dept. of Health, Ed. and Welfare*, 623 F.2d 523, 526 (8th Cir. 1980) ("Any medical diagnosis must necessarily rely upon the patient's history and subjective complaints.").

Accordingly, having reviewed the entire record, the Court concludes the ALJ has failed to give "good reasons" for rejecting the opinions of Dr. Safdar, and also Dozier's opinions.  *See Tilley*, 580 F.3d at 680 ("The regulations require the ALJ to 'always give good reasons' for the weight afforded to the treating source's opinion.").  The Court further finds that the ALJ failed in her duty to fully and fairly develop the record with regard to both Dr. Safdar's and Dozier's opinions.  Accordingly, the Court determines that this matter should be remanded for further consideration of Dr. Safdar's opinions.  Additionally, even though Mensen did not specifically argue that the ALJ failed to properly consider Dozier's opinions, the Court believes that the ALJ failed to properly evaluate Dozier's opinions.  Therefore, on remand, the ALJ shall provide clear reasons for accepting or rejecting Dr. Safdar's opinions and Dozier's opinions and support her reasons with evidence from the record.

### 2. Credibility Determination

Mensen argues that the ALJ failed to properly evaluate her subjective allegations of disability.  Mensen maintains that the ALJ's credibility determination is not supported

---

[16] *See* Administrative Record at 1894-1901.

by substantial evidence. The Commissioner argues that the ALJ properly considered Mensen's testimony, and properly evaluated the credibility of her subjective complaints.

When assessing a claimant's credibility, "[t]he [ALJ] must give full consideration to all the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; [and] (5) functional restrictions." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). An ALJ should also consider a "a claimant's work history and the absence of objective medical evidence to support the claimant's complaints[.]" *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008) (citing *Wheeler v. Apfel*, 224 F.3d 891, 895 (8th Cir. 2000)). The ALJ, however, may not disregard a claimant's subjective complaints "'solely because the objective medical evidence does not fully support them.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012) (quoting *Wiese v. Astrue*, 552 F.3d 728, 733 (8th Cir. 2009)).

Instead, an ALJ may discount a claimant's subjective complaints "if there are inconsistencies in the record as a whole." *Wildman*, 596 F.3d at 968; *see also Finch*, 547 F.3d at 935 (same); *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) ("The ALJ may not discount a claimant's complaints solely because they are not fully supported by the objective medical evidence, but the complaints may be discounted based on inconsistencies in the record as a whole."). If an ALJ discounts a claimant's subjective complaints, he or she is required to "'make an express credibility determination, detailing the reasons for discounting the testimony, setting forth the inconsistencies, and discussing the Polaski factors.'" *Renstrom*, 680 F.3d at 1066 (quoting *Dipple v. Astrue*, 601 F.3d 833, 837 (8th Cir. 2010)); *see also Ford*, 518 F.3d at 982 (An ALJ is "required to 'detail the reasons for discrediting the testimony and set forth the inconsistencies found.' *Lewis v. Barnhart*,

21

353 F.3d 642, 647 (8th Cir. 2003)."). Where an ALJ seriously considers, but for good reason explicitly discredits a claimant's subjective complaints, the Court will not disturb the ALJ's credibility determination. *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001) (citing *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996)); *see also Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (providing that deference is given to an ALJ when the ALJ explicitly discredits a claimant's testimony and gives good reason for doing so); *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003) ("If an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, we will normally defer to the ALJ's credibility determination."). "'The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts.'" *Vossen v. Astrue*, 612 F.3d 1011, 1017 (8th Cir. 2010) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001)).

In her decision, the ALJ properly set forth the law for making a credibility determination under the Social Security Regulations.[17] The ALJ also addressed some of the *Polaski* factors and offered some reasoning for finding Mensen's subjective allegations of disability less than credible.[18] Under such circumstances, the Court would normally affirm the ALJ's credibility determination. The Court is reluctant to affirm the ALJ's credibility determination in this instance, however, because the ALJ's decision focuses almost solely on Mensen's subjective allegations of disability due to her alleged physical impairments, including chronic joint pain and fibromyalgia. However, as discussed in section *IV.B.1.a and .b* of this decision, the ALJ failed to fully and fairly develop the record and properly consider the opinions of Mensen's treating psychiatric sources, Dr. Schroeder, Dr. Safdar, and Dozier. Dr. Schroeder, Dr. Safdar, and Dozier, who have treated Mensen regularly for over four years, opined that Mensen had serious limitations

---

[17] *See* Administrative Record at 34-35.

[18] *Id.* at 35; 38.

due to psychological impairments.[19] Accordingly, the Court believes that in remanding this matter for further consideration of the opinions of Dr. Schroeder, Dr. Safdar, and Dozier, the ALJ should also further consider Mensen's allegations of disability in light of her reconsideration of Dr. Schroeder's, Dr. Safdar's, and Dozier's opinions. *See Wildman*, 596 F.3d at 968 (providing that an ALJ may discount a claimant's subjective complaints "if there are inconsistencies in the record as a whole"); *Finch*, 547 F.3d at 935 (same); *Lowe*, 226 F.3d at 972 ("The ALJ may not discount a claimant's complaints solely because they are not fully supported by the objective medical evidence, but the complaints may be discounted based on inconsistencies in the record as a whole."); *see also Cox*, 495 F.3d at 618 (providing that an ALJ has a duty to develop the record fully and fairly). Therefore, the Court remands this matter for further development of Mensen's credibility determination.

### 3. Hypothetical Question

Mensen argues that the ALJ's hypothetical question to the vocational expert was incomplete because it did not properly account for all of her impairments. Similarly, Mensen also argues that the ALJ's hypothetical was incomplete and did not contemplate all of her functional limitations. Mensen maintains that this matter should be remanded so that the ALJ may provide the vocational expert with a proper and complete hypothetical question.

Hypothetical questions posed to a vocational expert, including a claimant's RFC, must set forth his or her physical and mental impairments. *Goff*, 421 F.3d at 794. "The hypothetical question must capture the concrete consequences of the claimant's deficiencies." *Hunt v. Massanari*, 250 F.3d 622, 625 (8th Cir. 2001) (citing *Taylor v. Chater*, 118 F.3d 1274, 1278 (8th Cir. 1997)). The ALJ is required to include only those

---

[19] *Id.* at 1095-1102 (opinions from Dr. Schroeder); 791-1798 (opinions from Dozier); 1894-1901 (opinions from Dozier and Dr. Safdar).

impairments which are substantially supported by the record as a whole. *Goose v. Apfel*, 238 F.3d 981, 985 (8th Cir. 2001); *see also Haggard v. Apfel*, 201 F.3d 591, 595 (8th Cir. 1999) ("A hypothetical question 'is sufficient if it sets forth the impairments which are accepted as true by the ALJ.' *See Davis v. Shalala*, 31 F.3d 753, 755 (8th Cir. 1994) (quoting *Roberts v. Heckler*, 783 F.2d 110, 112 (8th Cir. 1985).").

In section *IV.B.1.a* and *.b* and *IV.B.2* of this decision, the Court remanded this matter for further consideration of Dr. Schroeder's opinions, Dr. Safdar's opinions, and Dozier's opinions regarding Mensen's mental impairments, and for further consideration of Mensen's subjective allegations of disability. Accordingly, the Court determines that on remand, the ALJ should also reconsider the hypothetical question posed to the vocational expert to make sure that it captures the concrete consequences of Mensen's limitations based on the medical evidence as a whole, including the opinions of Dr. Schroeder, Dr. Safdar, and Dozier, and Mensen's own subjective allegations of disability. *See Hunt*, 250 F.3d at 625.

### C. Reversal or Remand

The scope of review of the Commissioner's final decision is set forth in 42 U.S.C. § 405(g) which provides in pertinent part:

> The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with our without remanding the cause for a rehearing.

42 U.S.C. § 405(g). The Eighth Circuit Court of Appeals has stated that:

> Where the total record is overwhelmingly in support of a finding of disability and the claimant has demonstrated his [or her] disability by medical evidence on the record as a whole, we find no need to remand.

*Gavin v. Heckler*, 811 F.2d 1195, 1201 (8th Cir. 1987); *see also Beeler v. Brown*, 833 F.2d 124, 127 (8th Cir. 1987) (finding reversal of denial of benefits was proper

where "the total record overwhelmingly supports a finding of disability"); *Stephens v. Sec'y of Health, Educ., & Welfare*, 603 F.2d 36, 42 (8th Cir. 1979) (explaining that reversal of denial of benefits is justified where no substantial evidence exists to support a finding that the claimant is not disabled). In the present case, the Court concludes that the medical records as a whole do not "overwhelmingly support a finding of disability." *Beeler*, 833 F.2d at 127. Instead, the ALJ simply failed to: (1) fully and fairly develop the record with regard to the opinions of Dr. Schroeder, Dr. Safdar, and Dozier; (2) make a proper credibility determination in this matter; and (3) provide the vocational expert with a hypothetical question that captured the concrete consequences of Mensen's limitations based on the medical evidence as a whole. Accordingly, the Court finds that remand is appropriate.

## V. CONCLUSION

The Court concludes that this matter should be remanded to the Commissioner for further proceedings. On remand, the ALJ must fully and fairly develop the record with regard to the opinions of Mensen's treating mental health sources, in particular the opinions of Dr. Schroeder, Dr. Safdar, and Dozier. Moreover, the ALJ must provide clear reasons for accepting or rejecting the opinions of Dr. Schroeder and Dr. Safdar. The ALJ must support her reasons for accepting or rejecting their respective opinions with evidence from the record. The ALJ shall also consider all of the evidence relating to Mensen's subjective allegations of disability, and address her reasons for crediting or discrediting those allegations when determining Mensen's credibility. Lastly, the ALJ shall also provide the vocational expert with a hypothetical question that captures the concrete consequences of Mensen's limitations based on the medical evidence as a whole.

## VI.  ORDER

For the foregoing reasons, it is hereby **ORDERED**:

This matter is **REVERSED** and **REMANDED** to the Commissioner of Social Security pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings as discussed herein.

DATED this 22nd day of October, 2014.

_____
JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA